NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FCMA, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>FUJIFILM RECORDING MEDIA U.S.A., INC., FUJIFILM HOLDINGS CORPORATION, FUJIFILM USA, INC., FUJIFILM HONG KONG LIMITED, PETER FAULHABER, HIRONOBU TAKETOMI, JOHN DOES 1 through 10 (fictitious names for presently unknown persons), and ABC CORPORATIONS 1 through 10 (fictitious names for presently unknown corporations),<br><br>                Defendants. | Civil Action No.: 09-cv-4053 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

       This matter comes before the Court on the motion of Defendants to compel arbitration and to stay litigation. The Court has considered the submissions in support of and in opposition to the motion and decides the matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendants' motion is granted.

**I.    BACKGROUND**

    On May 1, 2007, Plaintiff FCMA, LLC ("FCMA") entered into a four-year Distributorship Agreement with Defendant Fujifilm U.S.A., Inc. ("Fujifilm"). (See Am. Compl., Ex. A, Distributorship Agreement.) Prior to the execution of the Distributorship Agreement, Fujifilm was the exclusive distributor of Fuji-branded media products, having been so appointed by its affiliate, Defendant Fujifilm Corporation. (Id. at Ex. A., Arts. 1,

2.01.)  Under the Distributorship Agreement, Fujifilm transferred this exclusive right to Plaintiff, who became the sole distributor of Fuji consumer media products in the continental United States, Alaska and Puerto Rico.  (Id. at Ex. A, Arts. 1, 2.01.)

Fujifilm Recording Media U.S.A., Inc. ("FRMU") "is [the] successor in interest to Fujifilm" and "is a wholly-owned subsidiary of FujiFilm Holdings Corporation" ("FFHC").  (Id. at ¶ 10.)  Defendant Fujifilm Hong Kong Limited ("FFHK") also is a wholly-owned subsidiary of FFHC.  (Id. at ¶ 9.)  FRMU and FFHK, together with Fujifilm and FFHC, collectively are referred to by Plaintiff as "Fuji."  (Id. at ¶ 10.)

On June 11, 2009, pursuant to Article 20 of the Distributorship Agreement, Fuji informed FCMA of its decision to "discontinue all consumer optical discs (CDR/DVD/Blu-ray) formats [in the United States] by December 31, 2009."  (Id. at ¶ 89.)  Article 20 of the Distributorship Agreement states, in part, that "Fuji reserves the right to discontinue any Product at any time." (Id. at Ex. A, Art. 20.)  The Distributorship Agreement also contains an arbitration clause which provides, in part, that "[a]ll disputes, controversies or differences between the parties arising out of or in relation to or in connection with this Agreement shall be finally settled by arbitration before one arbitrator pursuant to the rules of the American Arbitration Association (the "AAA")." (Id. at Ex. A, Art. 31.)

On August 7, 2009, FCMA initiated this action in the Superior Court of New Jersey, Chancery Division, Bergen County, by filing a Complaint along with an Order to Show Cause seeking a temporary restraining order and preliminary injunction against Fuji to prevent it from terminating the Distributorship Agreement and to require it to continue shipping the optical disc products in accordance with the Agreement.  (See CM/ECF No.1, Exs. A, B.)  FCMA's Complaint asserted claims against Defendants FRMU, Fujifilm, and

FFHC for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with prospective economic advantage, fraudulent inducement, fraud, unjust enrichment, equitable estoppel, declaratory judgment, and violation of the New Jersey Franchise Practices Act.  Defendants removed the action to this Court on August 11, 2009.  In their Notice of Removal, Defendants stated that they "[did] not waive their right to move to compel arbitration of this dispute pursuant to the arbitration provision of the distributorship agreement at issue in the Verified Complaint."  (Id. at ¶ 3.)

By Order dated August 12, 2009, this Court denied FCMA's motion for a temporary restraining order and preliminary injunction.  By letter dated August 14, 2009, Defendants informed the Court of their intention to "fil[e] a pre-answer motion seeking to dismiss this action and/or compel arbitration." (CM/ECF No. 8, at 1.)  On August 26, 2009, Plaintiff filed a motion for reconsideration of this Court's denial of injunctive relief; the Court denied the motion on October 20, 2009.  On November 9, 2009, and November 30, 2009, Defendants filed two additional letters with the Court expressing their intent to compel arbitration at the appropriate time.  (See CM/ECF Nos. 25, 28.)

In accordance with their prior assertions, on December 22, 2009, Defendants filed a motion to compel arbitration and stay litigation, along with a motion to dismiss the action.  In response, Plaintiff filed an opposition brief and a cross motion to amend its Complaint.  By Order dated February 16, 2010, the Court granted Plaintiff's motion to amend its Complaint.  The Court denied Defendants' motions to compel arbitration and stay litigation and to dismiss the action.  These motions were denied without prejudice to Defendants to re-file them based on Plaintiff's Amended Complaint.

On March 15, 2010, FCMA filed an Amended Complaint. The Amended Complaint named one additional corporate defendant, FFHK, and two individual defendants, Peter Faulhaber and Hironabu Taketomi. Mr. Faulhaber and Mr. Taketomi are FRMU executives. Plaintiff also added two new claims—breach of contract and concert of action—and modified its fraud claim, dividing the claim into two separate counts—one against the corporate defendants and one against the individual defendants. Although the fraud claim was split, in its concert of action claim, Plaintiff alleges that "Fuji, together with Mr. Faulhaber and Mr. Taketomi, pursued a common plan to defraud FCMA." (Am. Compl. ¶ 179.) Plaintiff further alleges that "[e]ach of the . . . defendants actively participated in, aided or otherwise encouraged the common plan to defraud FCMA." (Id. at ¶ 180.) On March 25, 2010, Defendants filed the present motion to compel arbitration and stay litigation based on the Amended Complaint.

## II.   DISCUSSION

"Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 523 (3d Cir. 2009). Defendants argue that a valid arbitration agreement exists as to all Defendants, and that all of Plaintiff's claims fall within the scope of the agreement. Therefore, Defendants argue that Plaintiff is obligated to arbitrate all claims asserted in the Amended Complaint. On the other hand, Plaintiff argues that it should not be compelled to arbitrate any of its claims. First, Plaintiff argues that "Defendants sought to deprive FCMA of its federal statutory rights under the FAA[,]" making the arbitration provision "illegal and unenforceable." (Br. in Opp'n to Defs.' Mot. to Compel Arb. [hereinafter "Pl.'s Opp'n"], at

19.) Second, Plaintiff argues that Defendants fraudulently induced it to enter into the four-year Distributorship Agreement with no intention of remaining contractually bound for four years, rendering the contract void. Next, Plaintiff argues that, even if a valid arbitration provision existed, Defendants waived their right to arbitration by seeking affirmative relief from this Court. Finally, Plaintiff argues that Defendants' motion for a stay should be denied because it asserts claims in the Amended Complaint that are not within the scope of the arbitration provision and against defendants who were not signatories to the Distributorship Agreement.

### A. Validity of the Arbitration Provision

Plaintiff argues that "there is no valid agreement to arbitrate" since "Defendants sought to deprive FCMA of its statutory right[] under the FAA" to confirm or vacate an arbitrator's award in violation of 9 U.S.C. § 9. (Pl.'s Opp'n, at 19-20.) Specifically, Plaintiff argues that, because the arbitration provision states that the arbitrator's "decision . . . shall be final and binding and there shall be no right of appeal therefrom[,]" the provision is "illegal and unenforceable." (Id. at 19 (emphasis in original) (quoting from Article 31 of the Distributorship Agreement).

Contrary to Plaintiff's argument, the Third Circuit has held that language stating that the arbitration was to be "final, binding, and non-appealable" simply means that a district court must adhere to the decision as to the merits. Tabas v. Tabas, 47 F.3d 1280, 1288 (3d Cir. 1995); see also Southco, Inc. v. Reell Precision Mfg. Corp., 331 Fed. Appx. 925, 927 (3d Cir. 2009) (unpublished) ("[A] contract provision stating that arbitration is 'non-appealable' signifies that the parties to the contract may not appeal the merits of the *arbitration*; not that the parties agree to waive a right to appeal the district court's judgment

confirming or vacating the arbitration decision.") (emphasis in original).  Plaintiff cites no law to the contrary.  Because the language in the arbitration provision highlighted by Plaintiff is almost identical to the language addressed by the Third Circuit, the Court finds that the language does not violate the FAA.

### B.     Fraudulent Inducement

Plaintiff also argues that Defendants "[f]raudulently induced FCMA into entering the Distributorship Agreement."  (Pl.'s Opp'n, at 16.)  For this reason, Plaintiff argues that the contract as a whole is void.  Plaintiff makes no argument, other than the statutory rights one discussed above, that the arbitration provision itself was fraudulently induced or is, otherwise, void.

The law in the Third Circuit is clear that "unless the challenge is to the arbitration clause itself, the issue of [a] contract's validity is considered by the arbitrator in the first instance."  Gay v. CreditInform, 511 F.3d 369, 386 (3d Cir. 2007) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006)); see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967) ("[T]he statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.").  In Gay, the plaintiff argued "that both the arbitration provision and the Agreement as a whole [were] unconscionable."  Gay, 511 F.3d at 387.  The Third Circuit held that it only was appropriate for it to consider whether the arbitration clause itself was unconscionable, stating that "[t]he question of whether the Agreement as a whole is unconscionable is a separate issue that, if we find that arbitration of the case would be appropriate, the arbitrator must decide."  Id.

Here, Plaintiff only challenges the validity of the Agreement as a whole. Plaintiff cites no law for its position that such challenges should be decided in the first instance by this Court versus the arbitrator. As discussed above, Supreme Court and Third Circuit law are to the contrary. Therefore, the Court finds that the question of the Distributorship Agreement's validity is for the arbitrator, not this Court.

### C. Waiver of Arbitration Right

Plaintiff next argues that, even if the contract were not void due to fraud or illegality, Defendants waived their right to compel arbitration as a result of their "strategic decision to seek affirmative relief from the court." (Pl.'s Opp'n, at 20.) In the Third Circuit, "prejudice is the touchstone for determining whether the right to arbitrate has been waived by litigation conduct." Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 222 (3d Cir. 2007) (internal quotations omitted) (quoting Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 925 (3d Cir. 1992)). Factors that a district court should consider in evaluating prejudice include:

> [1] the timeliness or lack thereof of a motion to arbitrate . . . [; 2] the degree to which the party seeking to compel arbitration [or to stay court proceedings pending arbitration] has contested the merits of its opponent's claims; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; [4] the extent of its non-merits motion practice; [5] its assent to the [trial] court's pretrial orders; and [6] the extent to which both parties have engaged in discovery.

Id. at 222-23 (alteration in original) (quoting Hoxworth, 980 F.2d at 926-27). The Third Circuit has stated that, under this test, "[w]aiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." Id. at 223 (internal quotations omitted; alteration in original) (quoting Painewebber, Inc. v. Faragalli, 61 F.3d 1063, 1068-69 (3d Cir. 1995)).

Applying the <u>Hoxworth</u> factors to the facts of this case, the Court finds that Defendants did not waive their right to pursue arbitration under the Distributorship Agreement. Defendants expressly stated in their Notice of Removal, filed four days after Plaintiff filed its original complaint, that they "[did] not waive their right to move to compel arbitration . . . pursuant to the arbitration provision of the distributorship agreement at issue in the Verified Complaint." (CM/ECF No. 1, ¶ 3.) Defendants also filed letters with the Court on three separate occasions between August 2009 and November 2009 expressing their intention to compel arbitration when it came time to file their responsive pleadings. (See CM/ECF Nos. 8, 25, 28.) Additionally, approximately four months after commencement of the action, Defendants first moved to compel arbitration. The motion to compel or dismiss was the first motion seeking affirmative relief filed by Defendants. Finally, no discovery has taken place between the parties in this case. Therefore, the Court finds that Defendants have not waived their right to arbitration.

### D. Staying the Litigation

Finally, Plaintiff argues that it "has asserted a number of claims not covered by [the arbitration] provision and against parties not signatories to the contract." (Pl.'s Opp'n, at 21.) It argues that these claims should remain with this court and continue to be litigated. Defendants argue that all claims fall within the scope of the arbitration clause and that the matter should be stayed pending arbitration. Defendants also argue that both "equitable estoppel and public policy considerations require FCMA to arbitrate its claims against non-signatories including [FFHC], FFHK, Mr. Faulhaber, and Mr. Taketomi since, among other things, all of FCMA's claims against all Defendants arise under or are substantially

dependent upon the Distributorship Agreement." (Reply Br. in Further Supp. of Mot. to Compel Arb. & Stay Litig. Pursuant to §§ 3 & 4 of Fed. Arb. Act, at 12-13.)

"In determining whether the particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Century Indem., 584 F.3d at 524 (alteration in original) (quoting AT&T Techs. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986)). And, "ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989).

The Third Circuit has held that "when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction, and are generally construed to encompass claims going to the formation of the underlying agreements." Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000). Additionally, "[i]f the allegations underlying the claims 'touch matters' covered by [an arbitration clause in a contract], then those claims must be arbitrated, whatever the legal labels attached to them." Brayman Constr. Corp. v. Home Ins. Co., 319 F.3d 622, 626 (3d Cir. 2003) (alteration in original) (quoting Genesco, Inc. v. T. Kakiuchi & Co., Inc., 815 F.2d 840, 846 (2d Cir. 1987), and holding that bad-faith claims arose under the arbitration provision at issue). Thus, "[w]hen determining whether a given claim falls within the scope of an arbitration agreement, a court must 'focus on the factual allegations in the complaint rather than the legal causes of action asserted.'" Varallo v. Elkins Park Hosp., 63 Fed. Appx. 601, 603 (3d Cir. 2003) (unpublished) (quoting Genesco, 815 F.2d at 846, and holding that the plaintiff's

wrongful termination claims were within the scope of the arbitration agreement); see also Richardson v. V.I. Port Auth., No. 2009-136, 2010 WL 1641154, at *4, 10-11 (D.V.I. Apr. 21, 2010) (holding that the plaintiff's employment discrimination and tort claims fell within the scope of an arbitration provision that provided that "any controversy, dispute or claim arising out of or relating to this Agreement, [or] its interpretation, application, implementation, breach or enforcement which the parties are unable to resolve by mutual agreement, shall be settled by submission by either party of the controversy, claim or dispute to binding arbitration").

  The arbitration provision at issue in this case provides that "[a]ll disputes, controversies or differences between the parties *arising out of* or *in relation to* or *in connection with* this Agreement shall be finally settled by arbitration . . . ." (Am. Compl., Exh. A, Art. 31 (emphasis added).)  Plaintiff does not offer any specific argument for why some of the claims asserted are not covered by this broad language in the Distributorship Agreement given the applicable law in this Circuit.  Plaintiff merely states that "in addition to the breach of contract counts, there are tort claims (intentional interference with prospective economic advantage (Third Count), fraud (Fifth and Sixth Count) and conspiracy to commit fraud (Thirteenth Count)), and a claim arising under the New Jersey Practices Franchise Act . . . (Ninth Count)." (Pl.'s Opp'n, at 21-22.)  However, as highlighted by Defendants, all of these claims are based on Plaintiff's position that Defendants either fraudulently induced Plaintiff into entering the Distributorship Agreement, failed to perform under the Agreement, or wrongfully terminated the Agreement.  Specifically, Plaintiff's intentional interference claim incorporates all prior allegations, including those specifically related to its breach of contract claims, and states

that "Fuji intentionally . . . interfered with FCMA's prospective economic advantage by wrongfully terminating FCMA's exclusive distributorship." (Am. Compl. ¶ 127.) Plaintiff's fraud counts, including the conspiracy claim, as well as its Franchise Act claim also are based on allegations that Defendants fraudulently induced it to enter the Distributorship Agreement and/or wrongfully terminated the Agreement. (See Id. at ¶¶ 141-42, 147-48, 160, 179.)

Focusing on the actual allegations in the Amended Complaint, it is clear that all of Plaintiff's claims touch matters covered by the arbitration provision; they all have a common core of operative facts and arguments. Therefore, the Court finds that all of the claims are within the scope of the arbitration provision.

Finally, Plaintiff argues that it cannot be compelled to arbitrate the claims against FFHC, FFHK, Mr. Faulhaber, and Mr. Taketomi since these defendants were not signatories to the Distributorship Agreement. As with their argument regarding the scope of the arbitration provision, Plaintiff provides no additional argument or legal sources in support of this bare assertion in response to the law cited by Defendants.

"[I]n certain situations, a non-signatory to an arbitration agreement may compel a signatory to arbitrate." EPIX Holdings Corp. v. Marsh & McLennan Cos., 982 A.2d 1194, 1200 (N.J. Super. Ct. App. Div. 2009); see also E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 195 (3d Cir. 2001) (noting situations in which non-signatories may be bound by an arbitration clause). For example, the Third Circuit has "bound a signatory to arbitrate with a non-signatory at the non[-]signatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non[-]signatory's obligations and duties

in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations." E.I. DuPont, 269 F.3d at 199-200 (internal quotations omitted; alteration in original). The EPIX Court noted that "the combination of the requisite nexus of the claim to the contract *together with* the integral relationship between the non-signatory and the other contracting party [is] . . . a sufficient basis to invoke estoppel." 982 A.2d at 1202 (emphasis in original).

With respect to FFHC and FFHK, the allegations in the Amended Complaint do not differentiate between these two entities and Fujifilm and FRMU. Instead, Plaintiff collectively lumps them together as "Fuji." There are no allegations specific to the various corporate entities, which are affiliated with one another. Additionally, Plaintiff alleges that all defendants are liable "as a result of their collective fraudulent conduct during the course of the parties' business relationship[,]" and that all defendants "pursued a common plan to defraud FCMA." (Am. Compl. ¶¶ 1, 179.) Therefore, the Court finds that equitable estoppel considerations make it appropriate for Plaintiff to be compelled to arbitrate its claims against FFHC and FFHK. See Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 98 (2d Cir.1999) (compelling arbitration against a non-signatory where the plaintiff had treated signatories and non-signatories "as a single unit"); EPIX, 982 A.2d at 1202 (noting that "courts have concluded that a non-signatory may compel arbitration where the estopped plaintiff . . . specifically pleaded that the non-signatory and signatories conspired together").

With respect to the two individual defendants, Mr. Faulhaber and Mr. Taketomi, the Court reaches the same conclusion. They both are senior executives at FRMU. They were acting in their capacity as officers of the company in their dealings with Plaintiff. Plaintiff

has asserted that they acted in concert with the entity defendants, conspiring with them to defraud Plaintiff. For example, Plaintiff alleges Mr. Taketomi made false representations regarding the duration of the agreement to entice FCMA into a business relationship, and that both Mr. Taketomi and Mr. Faulhauber made numerous misrepresentations to FCMA as to the reasons for the termination of the Distributorship Agreement. (See Am. Compl. ¶¶ 146-48.) Thus, the Court also finds that the individual defendants may compel Plaintiff to arbitrate the claims asserted against them. A contrary result would permit a plaintiff to avoid its arbitration agreement simply by naming individual defendants in addition to or in lieu of the signatory entity. See Arnold v. Arnold Corp.-Printed Commc'ns For Bus., 920 F.2d 1269, 1281 (6th Cir. 1990) ("[I]f appellant can avoid the practical consequences of an agreement to arbitrate by naming non[-]signatory parties as [defendants] in his complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified.") (internal quotations omitted).

Therefore, all claims against all parties are subject to arbitration. Additionally, because Defendants have requested this Court to stay any further proceedings, this Court must grant the stay. See Lloyd v. Hovens, LLC, 369 F.3d 263, 269 (3d Cir. 2004) ("[W]henever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded.").

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration and stay the matter is granted. An appropriate Order accompanies this Opinion.

DATED: August 5, 2010           /s/ Jose L. Linares
                                JOSE L. LINARES
                                UNITED STATES DISTRICT JUDGE